JERRY GRANVILLE,

                Plaintiff,

      v.

TOM DART, *et al.*,

              Defendants.

Case No. 09 C 2070

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Jerry Granville (hereinafter, the "Plaintiff"), a former detainee at the Cook County Jail, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The Plaintiff claims that the defendants, jail officials, violated the Plaintiff's constitutional rights by subjecting him to inhumane conditions of confinement. This matter is before the court for ruling on the Defendants' Motion for Summary Judgment. For the reasons stated herein, the Motion is granted.

## I. BACKGROUND

The Defendants filed a Statement of Uncontested Material Facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, the defendants included a "Notice to the Plaintiff Regarding Requirements of Rule 56 . . . and the Applicable General Rules," as required by circuit precedent. That notice clearly explained the

requirements of the Local Rules and warned the Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The notice specifically provides:

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> > (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). Although *pro se* plaintiffs are entitled to lenient

standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1." *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite these admonitions – and although granted almost five months to file an opposing brief – Plaintiff's response to the Defendants' Statement of Uncontested Facts merely argues or clarifies certain points; the Plaintiff does not cite any authority for most of the factual propositions he makes. [Moreover, the Plaintiff responded only to the Defendants' Statement of Facts, declining to file a brief in opposition to the Defendants' memorandum of law.]

Because the Plaintiff is proceeding *pro se*, the Court will grant him some leeway and consider the factual assertions he makes in his response. However, the Court will entertain the Plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. FED. R. EVID. 602. In addition, a layperson may not testify about matters involving medical,

technical, or other specialized knowledge. *See* FED. R. EVID. 701, 702.

Consequently, the following facts, gathered from the Defendants' essentially uncontroverted Statement of Facts and other supporting evidence, are deemed undisputed for purposes of this motion [the Court has also inserted additional facts based upon the Plaintiff's deposition testimony]:

The Plaintiff was a pretrial detainee at the Cook County Jail at the time of the events giving rise to this action. (Complaint, p. 2. Section I(C).) The Plaintiff is no longer incarcerated. (Change-of-Address Notice, Document No. 41.) Defendant Tom Dart ("Dart") is the Sheriff of Cook County. (*Id.*, Section II(A)). Defendant Kenneth Trebilco ("Trebilco") is the Director of the Cook County Jail's Division 14, where the Plaintiff was confined. (*Id.*, Section II(B); Defendants' Exhibit 6, Affidavit of Kenneth Trebilco, ¶ 1.)

On January 19, 2009, the Plaintiff sought medical care for headaches, an upset stomach, and a sore throat. (Defendants' Exhibit 4, Detainee Health Service Request Form.) The Plaintiff was treated on January 21, 2009. (*Ibid.*; Trebilco Affidavit, ¶ 17.) A follow-up appointment for further examination was scheduled for February 6, 2009. (Trebilco Affidavit, ¶ 17.)

The Plaintiff was placed in Division 14 on January 27, 2009. (Complaint, p. 6; Defendants' Exhibit 2, Deposition of Jerry

Granville, p. 6.)  Upon arrival at his cell, the Plaintiff noticed the smell of mildew, water dripping from the ceiling, exposed mesh wire, general "decay," crumbling plaster, chipped paint, asbestos, and mold.  (Complaint, p. 6; Plaintiff's Dep., p. 7.)  The Plaintiff conceded during his deposition that he had no way of knowing whether the paint was lead-based.  (Plaintiff's Dep., p. 32.)  According to the Environmental Protection Agency, lead-based paint has been banned in the United States since 1978, more than thirty years.  *See* http://www.epa.gov/lead/pubs/leadinfo.htm. In addition, because the bed frame was metal and was installed very close to a radiator, the bed became very hot.  (Complaint, p. 6; Plaintiff's Dep., p. 7.)  The Plaintiff burned himself "several times a week" on the radiator.  (*Ibid.*)  Other inmates (but not the Plaintiff) were sometimes bitten by "poisonous insects."  (Plaintiff's Dep., p. 34.)

The Plaintiff began to experience headaches, nausea, and shortness of breath after being housed in the cell.  (*Id.*, pp. 10, 35; Complaint, p. 6.)  The Plaintiff claims that he had not experienced these problems prior to his confinement in Division 14.  (*Ibid.*)  The Plaintiff's unit housed inmates who were in a drug treatment program.  (Plaintiff's Dep., p. 37.)

The Plaintiff never complained to the named Defendants about his living conditions.  (Plaintiff's Dep., pp. 10-11.)  At the time, the Plaintiff did not know who either Dart or Trebilco was.

(*Id.*, p. 11.)  The Plaintiff complained to counselors and guards. (*Id.*, pp. 11-12.)  Due to the Plaintiff's complaints, unidentified jail staffers "in coats and jackets" went to the cell and asked the occupants questions about the problems they were experiencing. (*Id.*, pp. 12-13.)

Afterwards, "a lot of people" came to make repairs. (Plaintiff's Dep., p. 19.)  On February 2, 2009, a steam fitter inspected and attended to the steam leak.  (Trebilco Affidavit, ¶ 10; Plaintiff's Dep., p. 19; Defendants' Group Exhibit 3, Work Order #Y0913089.)  The same day, a plumber investigated the water leak.  (Trebilco Affidavit, ¶ 9; Defendants' Group Exhibit 3, Work Order #Y0913086.)

The next day, February 3, 2009, a carpenter went to the Plaintiff's cell to move his bed but had to refer the matter to iron workers because it was "not a carpentry issue."  (Trebilco Affidavit, ¶ 12; Plaintiff's Dep., p. 19; Defendants' Group Exhibit 3, Work Order #Y09013272.)  The carpenter referred the bed-moving to iron workers the next day.  (*Ibid.*)  The iron workers subsequently reinstalled the Plaintiff's bed away from the radiator.  (Plaintiff's Dep., p. 23.)

On February 3 and 4, 2009, an electrician made additional repairs, including replacement of a light switch, removal of exposed wires, and eradication of the mold.  (Trebilco Affidavit,

¶¶ 11 and 14; Defendants' Group Exhibit 3, Work Orders
Nos. Y09013271 and Y09014374.)

The persistent bad smell, along with the mold and mildew
issue, were never corrected, in the Plaintiff's recollection.
(*Id.*, p. 25.)

In response to the Plaintiff's complaints, he was also moved
to another bed across the room and away from the radiator on or
about February 5, 2009. (Plaintiff's Dep., p. 8.) However, the
move did not rectify the situation. (*Id.*, pp. 8-9.)

On February 20, 2009, the occupants of the Plaintiff's cell
presented a group "Letter of Grievance/Complaint" to the
administration. (Trebilco Affidavit, ¶ 18; *see also* Defendants'
Exhibit 5.)

The Plaintiff was released from the jail on March 26, 2009,
about two months after he was placed in county custody. (*Id.*,
pp. 6 and 17.)

The "grievance" was processed on April 21, 2009, after the
Plaintiff had already been discharged, and after he initiated this
lawsuit. (*See* Defendants' Exhibit 5; Trebilco Affidavit, ¶ 2;
docket.)

## II.  <u>LEGAL STANDARD</u>

Summary judgment "should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).

"A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

### III.  <u>ANALYSIS</u>

There is no genuine dispute as to any material fact, and the Defendants have established that they are entitled to judgment as a matter of law.  The Plaintiff failed to properly exhaust administrative remedies before filing suit.  Regardless, even viewing the record in the light most favorable to the Plaintiff, no reasonable person could find that the defendants violated his constitutional rights.

### A.  Exhaustion

The Plaintiff failed to exhaust administrative remedies prior to initiating suit.  The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner,* 531 U.S. 956 (2000).  "[I]f a prison has an internal administrative grievance system through

which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001). Inmates at the Cook County Jail receive a handbook describing basic programs and procedures. *See* John Howard Association's Court Monitoring Report, filed on May 12, 2000, in *Duran v. Sheahan*, 74 C 2949 (N.D. Ill.) (reflecting that the Cook County Jail has an established and publicized grievance procedure).

The submission of an informal "Letter of Grievance/Complaint" by the Plaintiff and several other detainees did not satisfy the exhaustion requirement. In order to exhaust, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001). An inmate must comply with the rules established by the State [or, in this case, county] with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court). The Plaintiff was required to follow formal grievance procedures to satisfy the exhaustion requirement. Dismissal is warranted for failure to properly exhaust administrative remedies prior to filing suit. *See* 42 U.S.C.

§ 1997e(a).  Because the Plaintiff did not file a formal grievance in accordance with established grievance procedures, the court lacks discretion to resolve his claim on the merits.  *Perez v. Wis. Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999).

## B.  The Substantive Merits of the Plaintiff's Conditions of Confinement Claims

Ignoring exhaustion concerns, the Plaintiff has failed to establish a triable Fourteenth Amendment claim arising from the conditions of his confinement.

The Due Process Clause prohibits conditions amounting to "punishment" of a pretrial detainee.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Minix v. Canarecci*, 597 F.3d 824, 830-31 (7th Cir. 2010).  The protections extended to pretrial detainees under the Due Process Clause are at least as extensive as the protections against cruel and unusual punishment afforded to prisoners by the Eighth Amendment.  *See, e.g., Velez v. Johnson*, 395 F.3d 732, 735 (7th Cir. 2005).  The Eighth Amendment requires that inmates be furnished with basic human needs.  *See Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Christopher v. Buss*, 384 F.3d 879, 881-82 (7th Cir. 2004).  Punishment requires something more than routine discomfort.  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Punishment in the constitutional sense requires allegations of extreme deprivations over an extended period of

time.  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Bell* at 542; *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).

Prison officials violate an inmate's constitutional rights in conditions of confinement cases where the alleged deprivation is "sufficiently serious" (the objective standard) and (2) the officials act with deliberate indifference (the subjective standard).  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Lehn v. Holmes*, 364 F.3d 862, 872 (7th Cir. 2004).  In the case at bar, the Plaintiff has failed to satisfy either prong.

### 1.  *Objective Prong*

Neither alone nor in their totality do the conditions described by the Plaintiff rise to the level of a constitutional violation.  The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004), *quoting Farmer, supra*, 511 U.S. at 834 (internal quotations omitted).  The U.S. Court of Appeals for the Seventh Circuit has made clear that the "mere fact that pretrial detention interferes with a person's desire to live comfortably and free from restraint does not without more make the conditions of that confinement unconstitutional." *Black v. Cline*, No. 08 C 5989, 2009 WL

2192806, *2 (N.D.Ill. Jul. 23, 2009) (Andersen, J.), *quoting Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005).

Substandard living conditions do not necessarily equal unconstitutional conditions. *Compare Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (objective component met where prison conditions were "strikingly reminiscent of the Black Hole of Calcutta"). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997), *citing Farmer, supra*, 511 U.S. at 833-34. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Although the Plaintiff characterizes his environment as "hazardous," the conditions he describes do not amount to a constitutional violation. Dripping water, exposed mesh wire, crumbling plaster, and chipping paint are all relatively insignificant issues. The courts have routinely found such minor, potential hazards not to be sufficiently serious to rise to the level of constitutional concern. *See, e.g., Christopher v. Buss*, 384 F.3d 879 (7th Cir. 2004) (defective, protrusive lip on

softball field was not an excessive risk to inmate safety); *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995) (a claim concerning the lack of handrails in the shower was properly dismissed as frivolous on initial review); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment"); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety").

As the U.S. Court of Appeals for the Seventh Circuit has explained: "An objectively sufficiently serious risk . . . is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency [such as] the acute risks posed by exposure to raw sewage, or inordinate levels of environmental tobacco smoke, or amputation from operating obviously dangerous machinery, or potential attacks by other inmates. . . ." *Christopher*, 384 F.3d at 882 (internal citations omitted). Even shocks from exposed wiring have been found to be primarily an easily avoided, "unpleasant inconvenience." *See Morissette v. Peters*, 45 F.3d 1119, 1124 (7th Cir.1995). "[F]ailing to provide a maximally safe environment, one completely free from . . . safety hazards is not [a form of cruel and unusual punishment]." *Carroll v. DeTella*, 255 F.3d 470,

472-73 (7th Cir. 2001). There is an ancient maxim, *de minimis non curat lex*, "the law cares not for trifles." *Ehrlich v. Mantzke*, No. 01 C 7449, 2002 WL 265177, *4 (N.D.Ill. Feb. 25, 2002) (Kocoras, J.). The Constitution does not concern itself with *de minimis* matters.

Moreover, the Plaintiff cannot recover damages for harm that might have occurred but did not. Federal law provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Smith v. Peters*, ___ F.3d ___, 2011 WL 148808, *2 (7th Cir. Jan. 19, 2011) (inmate claiming unsafe work conditions was not entitled to damages because no harm, in fact, occurred); *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("We believe that . . . § 1997e(e) forecloses an action for nominal or punitive damages for an Eighth Amendment violation involving no physical injury"). The Plaintiff is not entitled to restitution for unrealized threats to his safety and well-being. *See, e.g., Boatman v. Dart*, No. 08 C 3630, 2009 WL 1137753, *5 (N.D.Ill. Apr. 20, 2009) (Norgle, J.).

The Plaintiff has failed to make a triable showing that mold and mildew caused any significant health problems. "[C]onclusory allegations, without backing from medical or scientific sources,

that the rank air exposed [the plaintiff] to diseases and caused respiratory problems which he would not otherwise have suffered" are insufficient to survive summary judgment. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); *see also Vasquez v. Frank*, 290 Fed.Appx. 927, 929 (7th Cir. 2008). A motion for summary judgment "requires the responding party to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad* 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted).

The Plaintiff's subjective belief that mold and mildew caused headaches and shortness of breath, without any evidence to substantiate that belief, is insufficient for the matter to proceed to a trial. It strikes the Court that the symptoms the Plaintiff describes are just as easily attributable to a common cold or to drug withdrawal as exposure to mold and mildew on a wall. Furthermore, the Plaintiff sought medical attention for the same, basic symptoms a week **prior** to his transfer to Division 14. "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008). Opinions or inferences based on medical, scientific, technical, or

other specialized knowledge within the scope of FED. R. EVID. 702 are not admissible as lay testimony. *See United States v. York*, 572 F.3d 415, 420 (7th Cir. 2009). There is no triable issue as to whether mold and mildew triggered health complications.

In response to the Defendants' Motion for Summary Judgment, the Plaintiff additionally asserts that he did not receive proper dental care for an abscessed tooth. However, a plaintiff cannot raise new claims in response to a motion for summary judgment. *See, e.g., Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009); *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004). At this stage of the proceedings, the Plaintiff is limited to those claims made in his Complaint.

In short, the evidence fails to support an inference that the conditions the Plaintiff endured for two months were so objectively inhumane as to rise to the level of a constitutional violation.

### 2. *Subjective Prong*

Finally, irrespective of whether the Plaintiff has established an objectively serious deprivation, he has failed to show that the defendants acted with deliberate indifference. The named Defendants had no personal knowledge of or involvement in the conditions about which the Plaintiff complains; furthermore,

correctional officials remedied [or at least attempted to remedy] any reported problems.

The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson, supra*, 955 F.2d at 22. The subjective component requires that a prison official have a sufficiently culpable state of mind. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Hayes v. Snyder*, 546 F.3d 516, 521 (7th Cir. 2008). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. at 837; *Wilson*, 501 U.S. at 303; *Lee v. Young*, 533 F.3d 505, 509-10 (7th Cir. 2008). The deliberate indifference standard is satisfied if the Plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm.

Neither negligence nor gross negligence implicates the Constitution. *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002) (citations omitted); *Davidson v.*

*Cannon*, 474 U.S. 344, 347 (1986). "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006), *quoting Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998). "Proving deliberate indifference "requires more than a showing of negligent or even grossly negligent behavior. . . . [T]he corrections officer must have acted with the equivalent of criminal recklessness." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008), *quoting Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). "Deliberate indifference" is a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm upon a prisoner." *Wilson v. Seiter*, 501 U.S. 294 (1991); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "It is not enough that a reasonable prison official would or should have known that the prisoner was at risk; the official must actually know of and disregard the risk to incur culpability." *Lewis v. Richards*, 107 F.3d 549, 552-53 (7th Cir. 1997) (*citing Farmer*, 511 U.S. at 837-38).

The record fails to support a cause of action against either the Cook County Sheriff or the director of the Plaintiff's housing unit. The Plaintiff has failed to provide evidence demonstrating either defendant's direct, personal involvement, as required by *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003),

*inter alia*.  Nor has the Plaintiff indicated that the alleged violation of his constitutional rights occurred at the named defendants' direction or with their knowledge and consent.  *Id.*  Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation."  *Pepper v. Village of Oak Park*, 430 F.3d 805, 809, 810 (7th Cir. 2005) (citations omitted).

The mere fact that the defendants hold supervisory positions is insufficient to establish liability, as the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983.  *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001).  Section 1983 does not create collective or vicarious responsibility.  *Id.*  Supervisors cannot be held liable for the errors of their subordinates.  *Birch v. Jones*, No. 02 C 2094, 2004 WL 2125416, at *6 (N.D.Ill. Sep. 22, 2004) (Manning, J.), *citing Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992).  "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable."  *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations omitted).  To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind

eye for fear of what they might see.  They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery.  *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003).

At his deposition, the Plaintiff admitted that he never complained to either Trebilco or Dart and did not even know who they were at the time he was incarcerated.  Because the Plaintiff has failed to show that the named defendants were personally involved in – or even aware of – the alleged circumstances giving rise to the complaint, they are entitled to judgment as a matter of law.

In any event, the record establishes that correctional officials did not act with deliberate indifference to the Plaintiff's complaints.  To the contrary, officials "in coats and jackets" met with the Plaintiff and his cellmates to discuss their concerns after they lodged a complaint with the administration. Indeed, correctional officials quickly followed up with work by engineers, carpenters, plumbers, iron workers, and electricians to correct any problems with the cell.  Even if the defendants were not entirely successful in their remediation, the record reflects a good-faith effort on the part of correctional officials to make the Plaintiff's conditions more livable.

The Court finds that there is no triable dispute as to any material fact, and that the Defendants are entitled to judgment as a matter of law on the Plaintiff's claims. The Plaintiff failed to exhaust administrative remedies before filing suit. Regardless, no reasonable person could find that the Defendants violated the Plaintiff's constitutional rights. Accordingly, the case is terminated.

If the Plaintiff wishes to appeal this final judgment, he may file a Notice of Appeal with this Court within thirty (30) days of the entry of judgment. FED. R. APP. P. 4(a)(4).

## IV.   CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted. The Clerk is directed to enter judgment in favor of the defendants pursuant to FED. R. CIV. P. 56.

**IT IS SO ORDERED.**

_____
　　　Harry D. Leinenweber, Judge
　　　United States District Court

**DATE:** 3/11/2011